6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00121-CV


______________________________





IN RE: BILLY G. COLVIN








 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Grant








O P I N I O N



 Billy G. Colvin filed a Petition for Writ of Mandamus. Colvin filed a motion for DNA
testing with the trial court on November 15, 2001. The trial court immediately appointed Mike
Martin to act as counsel and represent him. Colvin complains that he has heard nothing from his
attorney since that date and that the 115th Judicial District Court has not taken the actions required
by Tex. Code Crim. Proc. Ann. art. 64.02 (Vernon Supp. 2002) to proceed with his motion. (1)

 Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion
or the violation of a duty imposed by law, and (2) the absence of a clear and adequate remedy at law. 
Cantu v. Longoria, 878 S.W.2d 131, 132 (Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 839-40
(Tex. 1992). Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of
discretion, or in the absence of another statutory remedy, when the trial court fails to observe a
mandatory statutory provision conferring a right or forbidding a particular action. Abor v. Black, 695
S.W.2d 564, 567 (Tex. 1985). 

 In a case where a defendant requests DNA testing, the Texas Code of Criminal Procedure
requires the convicting court to 1) provide the state's attorney with a copy of the motion, and 2)
require the state's attorney to deliver the evidence to the court or explain why he cannot do so. After
that occurs, the matter proceeds as set out by Article 64.03, which sets out the requirements that must
be met before the trial court may order DNA testing. (2)

 We requested a response from the State. In its response the State stated that it was not aware
of the motion for DNA testing and that it was not provided a copy of the motion. The statute
specifically requires the court, on receipt of the motion from the defendant, to take specific actions. 
The trial court has not done so. We find this to be a violation of a duty imposed by law on the trial
court. Mandamus relief is therefore appropriate.

 We direct the court to act as required by Tex. Code Crim. Proc. Ann. art. 64.01, et.seq
(Vernon Supp. 2002). The Petition for Writ of Mandamus is therefore conditionally granted. The
writ will issue only if the trial court fails to take appropriate action in accordance with this opinion.



 Ben Z. Grant

 Justice


Date Submitted: August 5, 2002

Date Decided: August 6, 2002


Do Not Publish
1. Tex. Code Crim. Proc. Ann. art. 64.01, et seq. (Vernon Supp. 2002).
2. We have recently discussed the application of this statute in detail in In re Johnston,
No. 06-02-00040-CV, 2002 WL 1041074 (Tex. App.-Texarkana May 24, 2002, no pet. h.). 



y="66" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium List 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00092-CV

                                                ______________________________

 

 

 

                    IN THE INTEREST OF
K.W. AND K.W., CHILDREN

 

 

                                                                                                  


 

 

                                       On Appeal from the 62nd
Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. CV38974

 

                                                       
                                           

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            The
biological parents[1]
of K.W. and K.W. filed this appeal from the termination of their parental
rights, an action sought by the Texas Department of Family and Protective
Services (TDFPS).  They argue only that
the evidence was insufficient to support the trial courts termination
order.  We affirm the trial courts
judgment.  

I.          Biological Parents Waived Challenge to
Legal and Factual Sufficiency of Predicate   Finding
Supporting Termination 

 

            Section
263.405 of the Texas Family Code governs appeals of final orders affecting the
parent-child relationship in cases where the children are placed under the care
of the TDFPS.  Tex. Fam. Code Ann. § 263.405 (Vernon 2008).  The statute reads:

The appellate court may not consider any issue
that was not specifically presented to the trial court in a timely filed
statement of the points on which the party intends to appeal or in a statement
combined with a motion for new trial. 

 

Tex.
Fam. Code Ann. § 263.405(i).  

            In
this case, the combined motion for new trial and statement of points stated:

the evidence is legally and factually insufficient
to support this Courts judgment.  Statement
on which Respondent intends to appeal:  

 

            (a)
Petitioner failed to meet its burden of proof by clear and convincing evidence
regarding the provisions of Texas Family Code section 161.001(1)(d), (e), (n),
and (p); and, 

 

            (b)
further failed to establish by clear and convincing evidence that the
termination of Respondents rights were in the childrens best interest.

            To
terminate parental rights in Texas, the evidence must establish:  (1) a statutory ground for termination; and
(2) the termination is in the childs best interest.  Tex.
Fam. Code Ann. § 161.001(1) (Vernon Supp. 2010).  In addition to the grounds specified in the
statement of points, the trial court also terminated the biological parents
rights on ground (M), that the parents had their parent-child relationship
terminated with respect to another child based on a finding that the [parents]
conduct was in violation of § 161.001(1)(D) or (E), Texas Family Code, or
substantially equivalent provisions of the law of another state.  

            Only
one predicate finding under Section 161.001(1) is necessary to support a judgment
of termination when there is also a finding that termination is in the childs
best interest.  In re A.V., 113 S.W.3d 355, 362 (Tex. 2003); In re N.R., 101 S.W.3d 771, 775 (Tex. App.Texarkana 2003, no
pet.).  If multiple predicate grounds
are found by the trial court, we will affirm based on any one ground because
only one is necessary for termination of parental rights.  In re
D.S., No. 07-10-00184-CV, 2011 WL 222218, at *8 (Tex. App.Amarillo
Jan. 25, 2011, no pet. h.) (citing In
re S.N., 272 S.W.3d 45, 49 (Tex. App.Waco 2008, no pet.); Perez v. Tex. Dept of Protective &
Regulatory Servs., 148 S.W.3d 427, 434 (Tex. App.El Paso 2004, no pet.); In re L.M., 104 S.W.3d 642, 647 (Tex.
App.Houston [1st Dist.] 2003, no pet.)).  Because the trial courts finding with
respect to Section 161.001(1)(M) was unchallenged, and can support the order of
termination, it is unnecessary to review legal and factual sufficiency
arguments as to the other grounds.  In re D.P.R.V., No. 04-09-00644-CV, 2010 WL 2102989, at *1 (Tex. App.San Antonio
May 26, 2010, no pet.) (mem. op.) (citing A.V.,
113 S.W.3d at 362); D.S., 2011 WL
222218, at *8; S.N., 272 S.W.3d at
49; Perez, 148 S.W.3d at 434; L.M., 104 S.W.3d at 647. 

II.        Termination Was in the
Childrens Best Interest 

            A.         Standard of Review 

            We
now turn to the question of whether clear and convincing evidence established
that termination was in the childrens best interest.  Tex.
Fam. Code Ann. § 161.001; In re
J.O.A., 283 S.W.3d 336, 344 (Tex. 2009). 
Clear and convincing evidence is proof that will produce in the mind of
the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established.  J.O.A., 283 S.W.3d at 344. 

            When
legal sufficiency of evidence supporting the best interest finding is
challenged, we look at all the evidence in the light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that the finding was true.  Id.
at 34445 (citing In re J.F.C., 96
S.W.3d 256, 266 (Tex. 2002)).  In this
bench trial, we assume that the trial court resolved disputed facts in favor of
its finding if a reasonable fact-finder could do so, but disregard all evidence
that a reasonable fact-finder could have disbelieved or found to have been
incredible.  Id.; In re J.A.W., No.
06-09-00068-CV, 2010 WL 1236432, at *2 (Tex. App.Texarkana Apr. 1, 2010, pet.
denied) (mem. op.). 

            In
reviewing for factual sufficiency, we give due consideration to evidence the court
could reasonably have found to be clear and convincing.  J.A.W.,
2010 WL 1236432, at *2.  If, on review of
the entire record, we conclude that the disputed evidence that a reasonable
fact-finder could not have credited in favor of the finding is so significant
that a fact-finder could not reasonably have formed a firm belief or
conviction, then the evidence is factually insufficient.  Id.
(citing J.F.C., 96 S.W.3d at 266).

            B.         Best Interest Analysis:  The Holley Factors

            In
reviewing the sufficiency of the evidence to support the best interest finding,
we apply the factors found in Holley v.
Adams, 544 S.W.2d 367, 37172 (Tex. 1976). 
Those factors include:  (1) the
desires of the children; (2) the emotional and physical needs of the children
now and in the future; (3) the emotional and physical danger to the children
now and in the future; (4) the parental abilities of the individuals
seeking custody; (5) the plans for the children by these individuals; (6) the
stability of the home; (7) the acts or omissions of the parents which may
indicate that the existing parent-child relationship is not a proper one; and
(8) any excuse for the acts or omissions of the parents.  Id.;
J.A.W., 2010 WL 1236432, at *4.  

            The
Holley factors are not exhaustive,
and no single consideration is controlling. 
J.A.W., 2010 WL 1236432, at *4
(citing In re A.B., 269 S.W.3d 120,
126 (Tex. App.El Paso 2008, no pet.)). 
Nor would the judge in this case be required to consider all of
them.  Id. (citing Holley, 544
S.W.2d at 372).  Undisputed evidence of
just one factor may be sufficient to support a finding that termination is in
the best interest of a child.  Id.  On
the other hand, the presence of scant evidence relevant to each Holley factor will not support a
finding.  Id. 

C.        Analysis
of Holley Factors Indicate
Termination Was in the Childrens Best Interest

 

            The children were two and ten months
old at the time they were taken by Child Protective Services (CPS), a division
of the TDFPS.  Although there was no
evidence of their desires, we note that the children were placed in foster care
in the prospective adoptive home of Seth and Mary Mearig.  The Mearigs were in their twenties, did not
have any children, were well educated, stable, and had a nice home.  Seth testified he is a civil engineer and
Mary is an architect.  The children were
described as bonded with them, and they called Seth and Mary Mom and Dad.  Seth testified the children were well-integrated
into our family, described a pleasant daily routine experienced by the
children in their home, and told the court he would absolutely adopt the boys.
 During a recent visit between the
children and Mother, [u]pon the oldest [three-year-old] child seeing his
mother, he did not recognize her.  He was
a bit taken back.  The youngest,
one-year-old child appeared like he really didnt know what was going on. 

            Due
to the childrens young age, the trial court could determine that the emotional
and physical needs of the children now and in the future were great.  Although Mother and Father may not have
placed the children in physical danger, there was some evidence to suggest that
the actions of Mother and Father could lead to emotional danger to the
children.  Mothers and Fathers parental
rights had been previously terminated with respect to an older child, A.B.[2]  During the termination proceeding for A.B.,
Father was incarcerated and Mother was arrested several times and had tested
positive for drugs.  She became pregnant
with K.W. before her parental rights to A.B. were terminated.  According to John Watkins, a TDFPS
investigating supervisor, Mother tested positive at least three different
times while she was pregnant with [K.W.]. 


            After
K.W. and K.W. were born, CPS was called when police found Mother hosting an
alleged party with a lot of underage drinking going on.  Mother was arrested for possession of
marihuana.  While CPS was involved with
the case, both Mother and Father admitted to Watkins that they were using
drugs.  However, when the issue of
in-patient drug treatment arose, Father denied drug use.  Mother and Father tested positive for cocaine
use after the children were removed.  Father,
who was on community supervision for sexual assault of Mother when she was
underage, was later arrested in violation of his community supervision and was
incarcerated until TDFPS brought suit for termination of parental rights.  Mother was arrested and released several times
prior to, and after, suit was brought. 
On one occasion, she received a twelve-month sentence of incarceration
and was released just two months prior to the termination hearing.  The trial court could have found that the
children would be placed in future emotional danger should the biological
parents behavior of drug use and repeated incarceration continue. 

            Mothers
and Fathers parental abilities were questioned during psychological examinations.  Fathers examination produced concerns of significant
substance abuse problems, significant difficulties with intellectual
functioning skills and problems with abstract reasoning suggest[ing] he may
have difficulty in a parenting role.  Mothers
evaluation revealed a significant history of demonstrating problematic skills
in terms of parental functioning, and presence of substance abuse problems
along with the perceived history of oppositional behavior.  

            There
was no testimony regarding the Fathers plan for the children.  On the day of the termination hearing, Mother
was living at Exodus Ministries, a home for female ex-offenders.  At the time of the hearing, there was testimony
that Mother was making progress while in Exodus Ministries.  She had passed a test to obtain a GED, had
completed several certificate courses, was enrolled in parenting and narcotics
anonymous classes, and was searching for employment.  Her plan was to find employment and to ask
Exodus Ministries to provide her with an apartment where she could be reunited
with the children.  

            Mothers
and Fathers questionable parental ability contributed to the failure to
provide a stable home.  When K.W. and
K.W. were initially taken, Father was unemployed and Mother worked at
McDonalds.  There was testimony that
neither of them made time to attend parenting classes required by CPS.  Mother eventually lost her job at McDonalds,
Mother and Father were evicted from their apartment, and they were unable to
provide a home address to CPS.  While the
children were initially placed with their paternal grandmother, Mother and
Father would miss opportunities for supervised visitation, and were unable to
provide necessary financial support for the childrens care.  Although Exodus Ministries could provide
Mother with a two-bedroom apartment, case workers testified there was no stable
or safe residence for the children.

            Despite
any excuses offered, the trial court could find Mothers and Fathers actions
and omissions set forth above indicated that their existing parent-child
relationship was not a proper one. 

            Considering
the Holley factors, we conclude that
a rational fact-finder could find that clear and convincing evidence
established that termination was in the childrens best interest.  We find the evidence legally and factually
sufficient to support the best-interest finding.  

III.       Conclusion 

            We
affirm the trial courts judgment.  

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          February
17, 2011

Date Decided:             February
18, 2011

 











[1]To
protect K.W. and K.W., we will not mention the names of their biological
parents.  We refer to them as Mother and
Father. 





[2]The
childs initials, also K.W., have been altered to avoid confusion.